UNITED STATES of America,
Plaintiff-Appellee,

v.

Jeffrey ASHCROFT,
Defendant-Appellant.

No. 79–5173.

United States Court of Appeals,
Fifth Circuit.

Dec. 7, 1979.

Rehearing Denied Jan. 7, 1980.

---

Robert M. Leen, Hollywood, Fla., for defendant-appellant.

Linda L. Carroll, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before THORNBERRY, GEE and HATCHETT, Circuit Judges.

THORNBERRY, Circuit Judge:

Jeffrey Ashcroft appeals from his conviction for conspiracy to distribute cocaine, possession of cocaine with intent to distribute, and distribution of cocaine. Ashcroft challenges the admissibility of an inculpatory statement he made after he was taken into custody claiming that it should be suppressed because he was illegally arrested without probable cause.

On December 12, 1978, an evidentiary hearing was held on Ashcroft's motion to suppress before a United States magistrate. The magistrate found that Ashcroft's arrest was without probable cause and recommended that the statements be suppressed. On January 12, 1979, the government petitioned the district court for rehearing. Without a hearing, the district court denied the motion to suppress, finding probable

cause for the arrest and overturning the magistrate's report. Ashcroft's trial commenced on January 25, 1979. It concluded with a jury verdict of guilty on five counts of the indictment and Ashcroft was sentenced on each count to serve a term of five years imprisonment followed by a special parole term of three years, each sentence to run concurrently.

We will first examine the facts considering the evidence in the light most favorable to the verdict. *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). In late August 1978, Drug Enforcement Agency (DEA) Agent Adam DeGaglia (Agent DeGaglia) met with William Panzica and expressed interest in purchasing large quantities of cocaine stating that he essentially had unlimited funds. Agent DeGaglia had several meetings with Panzica in an attempt to purchase five kilograms of cocaine. On August 28, 1978, Agent DeGaglia made his first purchase acquiring four ounces of cocaine and paying $6,000 to Panzica. Agent DeGaglia had further conversations with Panzica and others in late August and in mid-September in a further attempt to acquire five kilograms of cocaine. Agent DeGaglia met with Panzica, Richard Zucarelli, and Bob Cashman on September 13, 1978, at Panzica's residence where arrangements were made for Agent DeGaglia to examine one-half a kilogram of cocaine with the possibility of purchasing five kilograms if he liked the sample. The meeting between these parties ended without an agreement. On September 14, 1978, Agent DeGaglia had telephone conversations with Panzica, Zucarelli, and Cashman. They arranged to meet at Zucarelli's residence that evening but again the parties could not come to an agreement.

On September 15, 1978, Agent DeGaglia received a telephone call from Panzica offering him one pound of cocaine for $24,200. They arranged to meet at Panzica's apartment. It was at this time that Agent DeGaglia had his first contact with Ashcroft. Those present at this meeting included Agent DeGaglia, Panzica, Ashcroft, Panzica's girlfriend, and another DEA agent. Despite Ashcroft's presence in the room, he did not take part in the negotiations which eventually led to the purchase of one pound of cocaine for $23,900. Ashcroft sat on a sofa watching television about two feet away from Agent DeGaglia and the negotiating table where the cocaine was tested and examined. While Ashcroft did not talk, he could easily hear the entire conversation between Panzica and the DEA agents. It was later determined that Ashcroft was the owner of the cocaine being sold. Between September 15, 1978 and September 28, 1978, Agent DeGaglia had several conversations with Panzica but Ashcroft was never mentioned.

On September 28, 1978, Agent DeGaglia received a telephone call from Panzica indicating that he had one pound of cocaine for sale and that more was available. Arrangements were made at that time for a meeting that evening at Panzica's residence. Before Agent DeGaglia arrived, those present at Panzica's residence included Panzica, Panzica's girlfriend, Zucarelli, and Ashcroft. When Agent DeGaglia knocked on the door of Panzica's residence, Ashcroft and Panzica's girlfriend departed the living room and remained in an adjoining bedroom with the door closed while the negotiations took place in the other room. After examining the cocaine, Agent DeGaglia agreed to purchase the one pound of cocaine. Panzica and the other DEA agent then went downstairs to purportedly get the money but instead Panzica was arrested. The DEA agent then returned to Panzica's apartment with several other agents and arrested Zucarelli.

Agent DeGaglia then began to secure the apartment by searching other rooms to make sure that there were no other persons in the apartment who might have weapons. Agent DeGaglia opened the bedroom door and observed Ashcroft lying on the bed and Panzica's girlfriend sitting on the bed. Both were fully clothed and were merely talking. Agent DeGaglia entered the room with his .357 Magnum drawn. Other DEA agents also entered the room with their guns drawn. Ashcroft was ordered to get up against the wall and he was searched

spread eagle. After finding no weapon, Agent DeGaglia advised Ashcroft of his *Miranda* rights. DeGaglia then asked Ashcroft what he was doing in the apartment. Ashcroft responded that he was waiting for the deal to be over. When asked why he was waiting, Ashcroft responded that the cocaine being sold belonged to him. DEA Agent Paul Sennett corroborated DeGaglia's version of what happened in the bedroom. Agent DeGaglia then handcuffed Ashcroft. While it is unclear from the record, it appears that Ashcroft was again informed of his *Miranda* rights in the living room and he again stated that the cocaine was his. In any event, Ashcroft was then transported to DEA headquarters where he was questioned further.

Ashcroft contends that his statement that the cocaine being sold was his should be suppressed because the statement was the "fruit" of an illegal arrest made without probable cause. *See Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). In conjunction with this claim, we must first determine when the arrest occurred. If the arrest occurred when Ashcroft was handcuffed and after his statement concerning the ownership of the cocaine, probable cause for an arrest obviously existed. If the arrest took place when Ashcroft was searched and informed of his *Miranda* rights and before his statement, the issue of probable cause is much closer.

■ Whether or not an arrest has occurred depends on the particular facts involved in an incident. No formal words are required stating that an individual is under arrest and it is not necessary that a formal arrest record be filed. *Dunaway v. New York*, —— U.S. ——, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). The government argues that the actions of Agent DeGaglia and the other agents merely constituted an investigatory stop justified under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In *Terry* the Supreme Court approved a brief, on-the-spot stop on the street and a frisk for weapons without prob-

able cause since such action was so much less severe than the intrusiveness involved in a traditional arrest. The Supreme Court justified this procedure as reasonable under the Fourth Amendment by balancing the public's interest in crime prevention and in the police officer's safety against the limited violation of individual privacy. But the facts in this case indicate that much more than a *Terry* stop was involved. Agent DeGaglia entered the bedroom brandishing a .357 Magnum and he was followed by several other DEA agents, all with their guns drawn. Ashcroft was ordered up against the wall and he was searched spread eagle. Agent Sennett stated in his testimony that Agent DeGaglia yelled "Federal Agents; you are under arrest." He also testified that Ashcroft was handcuffed in the bedroom *before* he made his statement concerning the ownership of the cocaine. Agent DeGaglia also testified that he would have stopped Ashcroft if he had made any attempt to leave the bedroom. Ashcroft was therefore not free to leave and was at least technically arrested when he was searched and informed of his *Miranda* rights. Ashcroft's custody by the DEA agents, whether termed an arrest or otherwise, must be justified by probable cause. *Dunaway v. New York, supra.*

■ The crucial issue is whether probable cause for the arrest existed in light of the facts of this case. Probable cause for an arrest exists where the facts and circumstances within the knowledge of the arresting officer and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *United States v. Williams*, 594 F.2d 86 (5 Cir. 1979); *United States v. Perez*, 526 F.2d 859 (5 Cir.), *cert. denied*, 429 U.S. 846, 97 S.Ct. 129, 50 L.Ed.2d 118 (1976); *United States v. Savage*, 564 F.2d 728 (5 Cir. 1977). A showing of probable cause requires much less evidence than a finding sufficient to convict requires. *United States v. Middleton*, 599

F.2d 1349 (5 Cir. 1979); *United States v. Beck,* 431 F.2d 536 (5 Cir. 1970). As the Supreme Court stated in *Brinegar,* when "dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." 338 U.S. at 175, 69 S.Ct. at 1310, 93 L.Ed. at 1879.

■ The facts and circumstances of this case justify the arrest of Ashcroft based on probable cause. Agent DeGaglia had seen Ashcroft at the prior drug sale on September 15, 1978. At that time Ashcroft was sitting only two feet away from the negotiations and heard all that transpired. That sale involved the same DEA agents and, except for Zucarelli, the same defendants involved in the sale of September 28, 1978. Both sales took place at the same apartment and Agent DeGaglia knew Ashcroft did not live there. The magistrate found twice in his Report and Recommendation that probable cause existed on September 15, 1978 to arrest Ashcroft. This court has previously adopted the language of the District of Columbia Circuit that probable cause "is the sum total of layers of information and the synthesis of what the police have heard, what they know, and what they observe as trained officers. We weigh not individual layers but the 'laminated' total." *United States v. Clark,* 559 F.2d 420, 424 (5 Cir. 1977), *quoting Smith v. United States,* 123 U.S.App.D.C. 202, 358 F.2d 833, 837 (D.C.Cir.1966), *cert. denied,* 434 U.S. 969, 87 S.Ct. 1350, 18 L.Ed.2d 448 (1978). We again follow the language in *Smith* by finding that the probable cause existing on September 15, 1978 was merely intensified when Ashcroft was seen for a second time in an apartment that he did not live in where drug deals were consummated. Agent DeGaglia had probable cause to believe Ashcroft was involved in the conspiracy to distribute cocaine.

The record also reveals other factors which tend to show the existence of probable cause. First, a drug sale involving large quantities of cocaine is a private transaction that does not usually occur in the open or in the presence of strangers. The record shows several instances of fear and paranoia that surround a drug deal. The record also reflects that on several occasions involving other drug negotiations, several people suspected Agent DeGaglia of being an undercover policeman and only because of his skill as an officer was he able to conceal his true identity. This is the type of transaction shrouded in secrecy and closed to most people because of the nature of the activity. A reasonable person would think that someone present at two cocaine sales in the same apartment was somehow involved in the distribution of cocaine or a conspiracy to distribute cocaine, especially when he does not live in that apartment. Second, the record also reveals that the judge and the officers were aware of the practice followed by some drug dealers of hiding in another room until the deal is consummated in case there is an arrest so they can claim to be innocent bystanders. The record reveals that such was the situation in this case. It is also significant to note that there is apparently no other explanation given why Ashcroft and Panzica's girlfriend were waiting in the bedroom fully clothed and with the door closed, with Ashcroft lying on the bed and Panzica's girlfriend sitting beside the bed. A reasonable person would think, after seeing Ashcroft for the second time at a cocaine sale that he was involved. While we realize the question is a close one and should probably be limited to the particular facts of this case, we find that probable cause existed to arrest Ashcroft.

Ashcroft attempts to show the absence of probable cause based on the theory that "mere presence" at the scene of a crime cannot constitute probable cause. While his proposition is correct, we deem it inapplicable here. The decisions which he cites are all distinguishable.

First, Ashcroft relies on a line of authority holding that mere presence cannot support a *conviction* for the charged offense. *See United States v. Martin,* 483 F.2d 974 (5

Cir. 1973); *United States v. Barnett*, 468 F.2d 1153 (9 Cir. 1972); *Garza v. United States*, 385 F.2d 899 (5 Cir. 1967); *Smith v. United States*, 385 F.2d 34 (5 Cir. 1967). By contrast, we are concerned in this case with the requisite showing of probable cause to support an *arrest*.

Second, Ashcroft cites three cases holding that association with known criminals or mere presence at the scene of a crime cannot suffice for probable cause where presence or association was the only factor indicating that the defendant was involved in criminal activity. *See Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); *United States v. Di Re*, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948); *United States v. Chadwick*, 532 F.2d 773 (1 Cir. 1976), *aff'd*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). Again, these cases present situations factually distinguishable from our fact pattern. In these cases, the presence was the only factor connecting the defendant with the criminal conduct. No knowledge or any other extenuating circumstance was also shown to link the suspect with the suspicious circumstances. In *Sibron*, the defendant was stopped and searched after he was seen talking on the street with several drug addicts. The officer who observed this conduct had no knowledge that defendant was engaged in any illegal activity. Moreover, the prosecution abandoned the claim that probable cause existed. In *Di Re*, the defendant was a passenger in a car with a person implicated by a police informant for possessing counterfeit gas rationing coupons. Although defendant was in the car with the informant and the implicated party, the informant did not indicate that defendant was involved in the scheme. Moreover, the alleged crime occurred in broad daylight and did not involve any visibly criminal act. The crime here, however, was behind closed doors and involved conduct suspicious to view. In *Chadwick*, the defendant merely met an individual carrying a footlocker at a train station and assisted him in loading the footlocker into an automobile. Even though the footlocker contained marijuana, these facts were found insufficient to justify a finding of probable cause to arrest.

In this case, however, the agents had previous contact with Ashcroft sufficient to suggest his knowledge of and involvement with the drug transactions. Only two weeks earlier, DeGaglia had seen Ashcroft with Panzica at the scene of a drug sale. Ashcroft was less than two feet away from a negotiating table at which the drug was sampled and tested by the agents. The "factual and practical considerations of everyday life" would suggest that Ashcroft knew that an illegal drug transaction was taking place. When Ashcroft was later discovered secreted away in a bedroom adjacent to the scene of a second drug sale, Ashcroft was no longer "merely present." His arrest was based on probable cause and his statements were admissible against him.

AFFIRMED.

HATCHETT, Circuit Judge, dissenting.

Because I disagree with the majority's view that the record discloses probable cause for the arrest of Ashcroft, I dissent. As I view the record, Ashcroft was merely present on the premises and within hearing distance of the drug transaction. Presence alone is not sufficient to constitute probable cause, *United States v. Di Re*, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948), and hearing a conversation about an unlawful act does not implicate the listener.