**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Lyonel IRURZUN, Defendant–Appellant.**

**No. 79–5616.**

United States Court of Appeals,
Fifth Circuit.
Unit B

Nov. 19, 1980.

Joseph Mincberg, Miami, Fla., for defendant–appellant.

Stephen B. Gillman, Asst. U.S. Atty., Miami, Fla., for plaintiff–appellee.

Before HILL, KRAVITCH and HATCHETT, Circuit Judges.

HATCHETT, Circuit Judge:

We are again faced with the question of what more than mere presence is required to justify the warrantless arrest of a person believed to be involved in an unlawful drug transaction. Considering all of the circumstances in this case, we find probable cause for the arrest, and we affirm.

Sometime prior to May 31, 1979, Drug Enforcement Agency (DEA) officers arranged to purchase two kilograms of cocaine at the Athena Restaurant, in Miami, Florida, through its owner Karobinis. On May 31, 1979, at about 4:30 p. m., DEA agents began surveillance of the Athena Restaurant. They observed the appellant, Irurzun, Garces and Karobinis, sitting at a table in the restaurant. The restaurant was closed, and Karobinis allowed persons to enter or leave by opening and then locking the only door to the establishment. The restaurant is small, consisting of one room with a back section. Undercover agent Velazco, by previous arrangement, telephoned the restaurant at about 4:45 p. m. on May 31, 1979, and talked to Karobinis, who told Velazco "my people are here." During the course of this conversation, Karobinis informed Velazco that he would sell cocaine at $57,000 per kilogram. Velazco told Karobinis that he would not pay that amount.

Velazco could then hear Karobinis conversing with someone in the restaurant. He heard that unknown person tell Karobinis that $55,000 per kilogram would be acceptable. At about 6:00 p. m., the DEA agents on surveillance saw Garces leave the restaurant. At about 6:30 p. m., Irurzun also left the restaurant. Although the DEA agents did not see Garces return, near 7:00 p. m., they again saw Garces and Karobinis in the restaurant.

Shortly after 7:00 p. m., undercover agent Velazco and an informant entered the restaurant. Karobinis and Garces showed Velazco and the informant a quantity of cocaine in a shoe box. Noting that only about one–half a kilogram of cocaine was present, Velazco complained that two kilograms were not produced. At this point, Karobinis and Garces asked Velazco to show "some money." Upon this request, Velazco left the restaurant to make a phone call, allegedly regarding production of the money. Garces also left, stating that he had to "see someone." Garces walked around the corner to the Ayestran Restaurant, where he spoke with Irurzun. During this conversation, an unidentified male drove up in a red Thunderbird and joined in the conversation. Following this short conversation, Irurzun and the unidentified male drove a few blocks from the Athena Restaurant, to the Pentagon Motel, parked the car, and sat on the hood. Garces returned to the Athena Restaurant.

Upon returning to the restaurant, Garces picked up the cocaine and told Velazco he was leaving because Velazco had failed to produce any money. As he was leaving, Garces told Karobinis that if Velazco produced the money, Karobinis should take Velazco to Garces's apartment. Garces left with the cocaine. At this point, Velazco told Karobinis that he had to make another phone call. In this phone call, Velazco informed other DEA agents that Garces was carrying the cocaine in a shopping bag. Velazco then left the restaurant. While Garces was walking near the Athena Restaurant, he spotted the DEA agents, and began to run. He was arrested. After being given his rights, he stated that he was taking the cocaine to the Pentagon Motel, where he lived. Following Garces's arrest, he was seated in the back seat of the arresting officer's automobile. Unexpectedly, the automobile passed Irurzun, and Irurzun saw Garces, even though Garces attempted to slide down in the seat. Upon seeing Garces in the automobile, Irurzun crossed the street, and began walking fast. He was arrested with a loaded pistol in his back pocket.

Irurzun was indicted on three counts.[1] Count one charged Irurzun and two others with conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846.[2] Count two charged Irurzun and two others with possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1).[3] Count three charged Irurzun alone with carrying a firearm during the commission of a felony, in violation of 18 U.S.C. § 924(c).[4] At trial, the court denied

---

**1.** Also indicted in Counts I and III (along with Lyonel F. Irurzun) were Clestino Ruiz Garces and Dimitrios Karobinis. This appeal involves only Irurzun.

**2.** Title 21, United States Code, Section 846, provides:

Any person who attempts or conspires to commit any offense defined in this title is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribéd for the offense, the commission of which was the object of the attempt or conspiracy.

**3.** Title 21, United States Code, Section 841(a)(1), provides:

(a) Except as authorized by this title, it shall be unlawful for any person knowingly or intentionally–
(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or . . . .

**4.** Title 18, United States Code, Section 924(c)(2), provides:
(c) Whoever–
(1) uses a firearm to commit any felony for which he may be prosecuted in a court of the United States, or
(2) carries a firearm unlawfully during the commission of any felony for which he may be prosecuted in a court of the United States, . . . .

Irurzun's motion to suppress tangible evidence. The pistol taken from Irurzun and his fingerprint from the cocaine wrapper were admitted into evidence. He was convicted on counts one and three, but acquitted on count two. On count one he was sentenced to four years. On count three he was sentenced to one year, to run concurrently with the count one sentence. A special parole term of three years was imposed as to count one.

The only issue in this case is whether the DEA agents had probable cause to arrest Irurzun.

■ In resolving this issue, we must examine the evidence in the light most favorable to the verdict. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Our task is made easy because we recently applied the principles governing this case in *United States v. Ashcroft*, 607 F.2d 1167 (5th Cir. 1979). In *Ashcroft*, the test for the presence or absence of probable cause was clearly established when we stated:

> Probable cause for an arrest exists where the facts and circumstances within the knowledge of the arresting officer and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *United States v. Williams*, 594 F.2d 86 (5 Cir. 1979); *United States v. Perez*, 526 F.2d 859 (5 Cir.), cert. denied, 429 U.S. 846, 97 S.Ct. 129, 50 L.Ed.2d 118 (1976); *United States v. Savage*, 564 F.2d 728 (5 Cir. 1977). A showing of probable cause requires much less evidence than a finding sufficient to convict requires. *United States v. Middleton*, 599 F.2d 1349 (5 Cir. 1979); *United States v. Beck*, 431 F.2d 536 (5 Cir. 1970). As the Supreme Court stated in *Brinegar*, when 'dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of every day life on which

reasonable and prudent men, not legal technicians, act.' 338 U.S. at 175, 69 S.Ct. at 1310, 93 L.Ed. at 1879.

*United States v. Ashcroft*, at 1170.

Our cases following *Ashcroft* have announced the same general rules on probable cause. *United States v. Forrest*, 620 F.2d 446 (5th Cir. 1980); *United States v. Agostino*, 608 F.2d 1035 (5th Cir. 1980); and *United ted States v. Preston*, 608 F.2d 626 (5th Cir. 1979).

In *Ashcroft*, we upheld the warrantless arrest of Ashcroft who was in an apartment room other than the room where the drug transaction was taking place. Government agents knew that Ashcroft did not live in the apartment, but they had seen him, in that apartment, at a drug sale thirteen days before, sitting two feet away from the place where negotiations regarding the drugs were taking place. In *Ashcroft*, the majority stated that "[w]hile we realize the question is a close one and should probably be limited to the particular facts of this case, we find that probable cause existed to arrest." *Ashcroft*, at 1171. On the other hand, the majority, as well as the dissenting judge, reaffirmed the rule that presence alone is not sufficient to constitute probable cause.

■ The facts pointing to the existence of probable cause are much stronger in this case than in *Ashcroft*. The DEA agents knew that a drug transaction would take place at the Athena Restaurant at about 4:30 p. m. Only three people were inside the restaurant, one being Irurzun. During the conversation between Velazco and Karobinis, Karobinis stated that "my people are here." At that time, Irurzun and one other person were present. The most revealing factor in this scenario is that when negotiations broke down concerning the quantity of the cocaine and the lack of money, Garces left the restaurant to meet with Irurzun. He knew exactly where to find Irurzun. After meeting with Irurzun, Garces returned to the restaurant and brought the transaction to an end by leaving with the cocaine. Nothing had transpired at the restaurant to cause this sud-

den alteration in plans. Logically, any change regarding the drug transaction resulted from the conversation between Garces and Irurzun. In addition, after his arrest Garces stated that he was taking the cocaine to the Pentagon Motel, where he lived, and where Irurzun was waiting. When Irurzun saw that Garces was in custody of law enforcement officers, he sought to leave the area of the Pentagon Motel.

As we stated in *Ashcroft*, at 1171, "probable cause is the sum total of layers of information and the synthesis of what the police have heard, what they know, and what they observed as trained officers. We weigh not individual layers but the 'laminated' total."

While presence alone is not enough to constitute probable cause, presence and additional factors that would lead a prudent person to believe that an offense has been or is being committed is sufficient.

Although Irurzun was not present when direct negotiations took place, and although agents did not see Irurzun handling cocaine, we find that probable cause existed for his arrest. Accordingly, the judgment of the district court is affirmed.

AFFIRMED.