**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Camillo VARGAS, Oscar Burgos,**
**Defendants-Appellants.**

No. 80–5345.

United States Court of Appeals,
Fifth Circuit.
Unit B

April 22, 1981.

Federico A. Moreno, Asst. Federal Public Defender, Miami, Fla., for Vargas.

Steven E. Kreisberg, Miami, Fla. (Court-appointed), for Burgos.

Linda L. Carroll, Sonia O'Donnell, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before MORGAN, RONEY and KRAVITCH, Circuit Judges.

PER CURIAM:

Defendants challenge their convictions for possession of cocaine with intent to distribute on the ground the cocaine was illegally seized and should have been suppressed at trial. We hold the initial stop of

defendants' vehicle was a legitimate investigatory stop based on reasonable suspicion and the subsequent seizure of cocaine in plain view was valid. The convictions are affirmed.

In its opinion and order adopting the magistrate's report in part and denying the motion to suppress, the district court found the following facts were established at the evidentiary hearing. A confidential informant notified customs officers that the vessel GEMMA I would be arriving in Miami from Colombia, South America, with a large quantity of cocaine, and that a seaman named Cardona was involved in the smuggling activity. On September 24, 1979, at about noon, the GEMMA I arrived at Miami and docked at the Bernuth Marine Shipping Company. A preliminary customs inspection cleared the vessel, but no one was permitted off until after 2:00 p.m. Between 2:00 p.m. and 3:00 p.m. the vessel was not under surveillance and anyone could have left the GEMMA I without inspection or interrogation. At the time, a second vessel, which was not under suspicion, was also docked at the Bernuth complex.

At 3:00 p.m. surveillance was established. Cardona left the ship at 6:00 p.m. and was immediately stopped and searched, but no contraband was found. At 11:00 p.m. two officers came on duty and began conducting surveillance from an automobile located outside the Bernuth complex at the east end of the parking lot. From this point, the agents could see the stern of the GEMMA I and the small open gate of the complex about 100 yards away. The officers observed a blue Chevrolet parked immediately outside the complex. At 12:50 a.m. defendants Vargas and Burgos and defendant Nossa-Sanchez, who is not a party to this appeal, were seen by the agents exiting the gate and moving rapidly toward the Chevrolet. One of the men was observed entering the backseat of the car in an "awkward" manner.

The officers followed the car and stopped it a few blocks away at a closed but lighted service station. As one officer approached the car he saw plastic bags containing what appeared to be cocaine on the rear seat between Vargas and Nossa-Sanchez. Defendants were ordered out of the car and searched, revealing more cocaine taped to their bodies. They were then arrested. The GEMMA I was searched the next day and cocaine was found in seaman Cardona's cabin.

■ The Court can quickly dispose of defendants' argument that the cocaine could not have been in plain view because the officer did not use a flashlight and could not have seen the cocaine in the dim light of the closed service station. In reviewing a suppression order, the trial court's findings of fact must be accepted unless they are clearly erroneous. *United States v. Metz*, 608 F.2d 147, 154 (5th Cir. 1979), *cert. denied* —— U.S. ——, 101 S.Ct. 80, 66 L.Ed.2d 24 (1980); *United States v. Duckett*, 583 F.2d 1309, 1313 (5th Cir. 1978). A review of the suppression hearing transcript reveals no basis for holding the court's finding on this question clearly erroneous. One officer testified the lighting was sufficient to permit him to see the cocaine through the window of the automobile, and the court was entitled to credit this testimony. The fact that the other officer did not simultaneously see the cocaine does not render the testimony any less credible. Once this cocaine was observed, the officers had probable cause to search and arrest defendants. Therefore, the cocaine seized was admissible unless the initial stop of defendants' vehicle bringing the officers in plain view of the narcotics was unlawful. *Coolidge v. New Hampshire*, 403 U.S. 443, 465–468, 91 S.Ct. 2022, 2037–2039, 29 L.Ed.2d 564 (1971).

On this issue, defendants first argue that the manner in which the customs officers stopped their car was so coercive and restrictive that it constituted an arrest which was not supported by probable cause. Defendants rely primarily on the Ninth Circuit case of *United States v. Beck*, 598 F.2d 497 (9th Cir. 1979), where the court formulated the test for distinguishing between an arrest and an investigatory stop as whether a

reasonable person, innocent of any crime, would think he was being arrested. In evaluating all the circumstances, the court said controlling weight should be given to objective factors such as the degree of force used and the extent of restraint on liberty rather than to the subjective intent of the officers involved. *Id.* at 500–501. Under the facts of this case, we need not decide whether this Circuit would adopt the approach taken by the Ninth Circuit because even under a purely objective test the stop in this case did not involve the degree of coercion and restraint necessary to transform an otherwise legitimate investigatory stop into an arrest requiring probable cause.

■ In this Circuit, whether an arrest has occurred depends upon the nature and degree of the intrusion under all the facts of the particular encounter. *See United States v. Tookes,* 633 F.2d 712 (5th Cir. 1980); *United States v. Hill,* 626 F.2d 429 (5th Cir. 1980); *United States v. Ashcroft,* 607 F.2d 1167 (5th Cir. 1979). No formal words of arrest are required and it is not necessary that a formal arrest record be filed. *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *United States v. Ashcroft,* 607 F.2d at 1170. It is equally clear that not every stop and brief detention by law enforcement officers constitutes an arrest. The courts have long recognized that some involuntary stops for investigation do not rise to the level of an arrest, but rather are less-than-arrest "seizures" subject to a less-than-probable-cause standard under the Fourth Amendment. *See, e. g., United States v. Cortez,* —— U.S. ——, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. Brunson,* 549 F.2d 348, 357 (5th Cir.), *cert. denied,* 434 U.S. 842, 98 S.Ct. 140, 54 L.Ed.2d 107 (1977).

■ The facts here reveal nothing more than the stop of a vehicle at night by two officers using their siren and emergency light. Under the circumstances, that the officers approached the automobile with their guns drawn as a precautionary measure does not by itself turn an otherwise investigatory stop into an arrest, especially when the district court found no indication that defendants were aware the officers had their guns drawn. *See United States v. White,* 648 F.2d 29, 28 Cr.L. 2534 (D.C.Cir. 1981).

■ The parties agree that the standard applicable to an investigatory stop is reasonable suspicion. *United States v. Brignoni-Ponce,* 422 U.S. at 881, 95 S.Ct. at 2580. The test, as recently enunciated by the Supreme Court in *United States v. Cortez,* —— U.S. ——, ——, 101 S.Ct. 690, 693, 66 L.Ed.2d 621 (1981), is whether the detaining officers, based on the totality of the circumstances, had a particularized and objective basis for suspecting the particular persons stopped of criminal activity. The opinion in *Cortez* suggests that reasonable suspicion should be evaluated in light of the officers' training and experience and may vary according to the degree of intrusion into privacy occasioned by the stop or search. *Id.* at ——, 101 S.Ct. at 693–697.

■ While the Court recognizes the facts in this case make the question a close one, we nevertheless hold the district court cannot be reversed for finding the officers had reasonable suspicion to stop defendants' automobile. The officers had reliable information linking at least one named crew member of the GEMMA I and possibly others to a large-scale narcotics importation scheme. They observed three men leaving the Bernuth complex at a late hour and hurrying to a vehicle parked in the dock area. One of the men appeared to have difficulty bending to enter the car, further arousing their suspicions. Under the totality of the circumstances, and in light of the limited intrusion occasioned by the initial stop, the Court holds the officers acted reasonably and within the bounds of the Fourth Amendment in stopping defendants' car. The motion to suppress was properly denied.

AFFIRMED.