[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-12324

_____

TYLER LAND,

Plaintiff-Appellant,

*versus*

SHERIFF OF JACKSON COUNTY FLORIDA,
JOHN ALLEN,
individually,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 5:19-cv-00120-MCR-MJF

_____

Before WILLIAM PRYOR, Chief Judge, ABUDU and ED CARNES, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal presents the issue of whether Deputy John Allen and Sheriff Louis Roberts are entitled to qualified and state-agent immunity from Tyler Land's complaint that he was arrested pursuant to a warrant based on a false affidavit. After Land drove a methamphetamine trafficker to an undercover drug sting, Allen obtained a warrant from a magistrate judge and arrested him. Florida charged Land with aiding and abetting drug trafficking and detained him for over six months before dismissing the charges. Land sued Allen and Roberts under federal and state law, alleging that Allen illegally arrested, detained, and prosecuted him and that Roberts was deliberately indifferent to and negligently caused Allen's misconduct. The district court granted summary judgment for the officers. Because Allen's warrant affidavit—excluding any false statements—supplied probable cause for Land's arrest, we affirm.

## I. BACKGROUND

Sheriff Louis Roberts of Jackson County, Florida, hired John Allen as a deputy in 2009. Before hiring Allen, the Sheriff's office conducted a background investigation and found him to be qualified and of good moral character, as required by state law. *See* FLA. STAT. § 943.13(7) (deputies must have good moral character). Allen completed various training exercises during his employment and

was assigned additional responsibilities in the K-9 unit and on a drug task force affiliated with the federal Drug Enforcement Administration.

In 2016, Allen, as part of the drug task force, was investigating the conduct of a suspected drug trafficker named Scott Smith. On June 14, a Tuesday, officers phoned Smith to arrange a controlled purchase of methamphetamine at 2 p.m. in the parking lot of a Dollar General store in Greenwood, Florida. An undercover federal agent, fitted with surveillance equipment and accompanied by two confidential informants, waited at the purchase location in a black truck. A surveillance plane circled over the scene.

Smith arrived at the store parking lot in a Ford Explorer driven by Tyler Land. The two were accompanied by Smith's girlfriend, Martha Bellamy, who had been a confidential informant in other investigations. Smith exited Land's Ford Explorer and entered the federal agent's black truck; simultaneously, the two confidential informants exited the black truck and entered Land's Ford Explorer. Inside the black truck, Smith sold the agent approximately 15 grams of methamphetamine—a trafficking quantity. *See* FLA. STAT. § 893.135(1)(f)(1).

Officers identified Land as the driver of the Ford Explorer. But Land later testified in his deposition that he had not known about the drug deal and only occasionally "crossed paths" with Smith and Bellamy. According to Land, on the day of the drug purchase, Smith had offered to pay Land to drive him to get some parts for a wrecked truck and Land accepted the offer. Along the way,

Smith received a phone call and offered Land "some extra gas money" in exchange for a detour to the Dollar General.

On June 24, 2016, Allen signed a probable cause affidavit for Land's arrest as a principal to methamphetamine trafficking, which was received in the Clerk's Office on June 27. The affidavit accurately certified, as the basis for probable cause, that the drug task force had "prearranged" the purchase of a trafficking quantity of methamphetamine from Smith, and that Land and Smith had arrived together at the designated time and place. It explained that Land had "driven [Smith] to the meeting location," was "positively identified" as the driver of the vehicle, and "was present" for the surveilled purchase.

But the affidavit contained several significant errors. Among other errors, it wrongly stated that the purchase quantity was 30.54 instead of 15 grams of methamphetamine. According to Allen, the 30.54 number was a "clerical error," a copy-and-paste from an affidavit prepared for "another drug deal . . . conducted with [] Smith just prior." The affidavit also wrongly stated that Land had overseen the purchase "as it took place inside his vehicle." Allen later testified that he misidentified the vehicle where the purchase took place because of "what the surveillance team"—that is, the team in the plane—had "provided [him]." He suggested that the "several exchanges of people between vehicles at the onset of the investigation" may have confused the overhead team, but he also confessed that he "[didn't] have anybody that positively said that [the purchase in Land's vehicle] is what happened." He also admitted that

he did not reach out to the federal agent who had made the hand-to-hand purchase, but instead relied on his "interpretation" of the surveillance chatter of his Jackson County colleagues. Finally, the affidavit wrongly stated that the drug task force investigation had targeted both Smith and Land. Allen later admitted he was aware that only Smith, and not Land, had been a target.

A magistrate judge, relying on Allen's affidavit, signed a warrant for Land's arrest on June 24, 2016. That same day, deputies including Allen arrested Land at his home. Land was initially charged as a principal to trafficking 28 grams or more—an error in quantity—of methamphetamine. Smith was also arrested and charged with methamphetamine trafficking, and he later pleaded no contest to a lesser charge and received a 60-month sentence.

Immediately after the arrests, Bellamy called Allen to tell him that he had gotten the "specifics of it"— the vehicle where the purchase occurred and whether Land knew about the drugs—wrong. Allen allegedly told her to "keep [her] mouth shut."

Land spent over six months in jail. In January 2017, his bond was reduced, so he paid it and was released. In October, the state filed a *nolle prosequi* because Land's role in the drug transaction was "minimal" and the "6 months Mr. Land did in the county jail and the additional 6 months he has remained on bond" provided sufficient punishment.

Land filed suit in the district court. His complaint alleged claims of false arrest and seizure in violation of the Fourth Amendment; illegal detention in violation of the Due Process Clause of

the Fourteenth Amendment; civil conspiracy to violate his constitutional rights; and malicious prosecution, intentional infliction of emotional distress, and negligent hiring, retention, training, or supervision under Florida law. Roberts and Allen moved for summary judgment.

The district court granted summary judgment for the officers based on qualified and state immunity and because Land failed to prove his claims. It ruled that a genuine dispute existed about whether Allen's affidavit misstatements were reckless, but it determined that even absent those misstatements, probable cause supported Land's arrest. It also ruled that Land could not prove a claim of deliberate indifference against Roberts, that any claim of prolonged detention arose under the Fourth Amendment and failed, that no underlying constitutional violation supported his allegation of civil conspiracy, and that the officers enjoyed immunity from his claims under state law.

## II. STANDARD OF REVIEW

We review *de novo* a summary judgement. *See Washington v. Howard*, 25 F.4th 891, 897 (11th Cir. 2022). Summary judgment is warranted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

## III. DISCUSSION

We address in four parts Land's claim that he was arrested based on a false warrant affidavit. First, because Land challenges a seizure based on legal process—that is, a warrant-based arrest—the

common law tort of *malicious prosecution*, not false arrest, guides our review, and Allen is entitled to qualified immunity against Land's claim that Allen violated the Fourth Amendment. Second, because Allen did not violate the Fourth Amendment, Land's federal claim against Sheriff Roberts fails. Third, Land cannot prove any other violation of his federal rights. And fourth, state-agent and sovereign immunity bar Land's claims under state law.

### A. Land's Fourth Amendment Claim Against Allen is Barred by Qualified Immunity.

Public officials acting within their discretionary authority enjoy qualified immunity from "civil damages when their conduct does not violate a constitutional right that was clearly established at the time of the challenged action." *Williams v. Aguirre*, 965 F.3d 1147, 1156 (11th Cir. 2020) (citation and internal quotation marks omitted). The absence of a constitutional violation ends the analysis of qualified immunity. *See Pearson v. Callahan*, 555 U.S. 223, 242 (2009) (courts may engage in the steps of the analysis in any order). If Land cannot prove that Allen violated his rights under the Fourth Amendment, Allen is entitled to qualified immunity.

Malicious prosecution—*not* false arrest—provides the tort analogue for Land's claim that Allen violated his Fourth Amendment right by arresting him *pursuant to a warrant* based on a probable-cause affidavit containing misrepresentations. *See Thompson v. Clark*, 142 S. Ct. 1332, 1337 (2022); *Williams*, 965 F.3d at 1158; *see also Laskar v. Hurd*, 972 F.3d 1278, 1284–85 (11th Cir. 2020) (plaintiff must prove that he was arrested based on a warrant lacking

probable cause, and that proceedings terminated in his favor—for example, by dismissal of charges). A challenge to a warrant-based arrest alleges that the *legal process* has failed. *See Williams*, 965 F.3d at 1165. Where a magistrate judge's "probable cause determination is predicated solely on a police officer's false statements," the "legal process itself [has] go[ne] wrong." *Id.* at 1158 (quoting *Manuel v. City of Joliet*, 137 S. Ct. 911, 918 (2017)). The warrant "do[es] nothing to satisfy the Fourth Amendment's probable-cause requirement" when the judge was presented with materially incorrect information. *Id.* (quoting *Manuel*, 137 S. Ct. at 919).

The district court did not err in granting Allen qualified immunity because probable cause existed for the arrest. The absence of probable cause is an element of any claim that an arresting officer violated the Fourth Amendment. *See Williams*, 965 F.3d at 1159 ("[T]he absence of probable cause is undoubtedly a requirement for a claim of malicious prosecution."); *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010) (same for warrantless arrest). Probable cause exists when, after considering the totality of the circumstances, "a reasonable officer could conclude" that "there was a substantial chance of criminal activity." *District of Columbia v. Wesby*, 138 S. Ct. 577, 588 (2018) (citation and internal quotation marks omitted); *Washington*, 25 F.4th at 899–902 (reconciling precedents and holding that the *Wesby* standard applies). It is "not a high bar." *Wesby*, 138 S. Ct. at 586 (citation and internal quotation marks omitted).

But the *nature* of the probable-cause inquiry differs between warrant-based and warrantless arrests. A *warrant-based* arrest ordinarily requires the supporting affidavit to provide probable cause for the *specific crime* for which the detainee was arrested. *See Williams*, 965 F.3d at 1162. In contrast, officers conducting warrantless arrests do not violate the Fourth Amendment so long as probable cause existed to "arrest the suspect for *some* crime, even if it was not the crime the officer thought or said had occurred." *Id.* at 1158. This distinction exists because persons arrested without a warrant can be held only for a "brief period," typically no longer than 48 hours, before being brought before a magistrate judge. *Id.* at 1164 (quoting *Gerstein v. Pugh*, 420 U.S. 103, 113–14 (1975) (internal quotation marks omitted)). A longer detention requires a probable-cause determination, made by a neutral magistrate judge, that the arrestee committed a specific crime. *See id.*

Because Land was detained for 6 months, we must evaluate whether Allen's affidavit, excluding his misstatements, provided enough information for the magistrate judge to find probable cause that Land committed the crime of aiding and abetting drug trafficking. *Williams*, 965 F.3d at 1165 (reviewing whether "the legal process justifying [the] seizure . . . was constitutionally infirm," and whether the "seizure would not otherwise be justified without legal process"). We do not consider the subjective knowledge of the arresting officer, later amendments not presented to a magistrate judge, or any evidence not incorporated into the operative affidavit. *See Williams*, 965 F.3d at 1163–64; *Garmon v. Lumpkin County*, 878 F.2d 1406, 1409 (11th Cir. 1989) (instructing courts to consider

"the facts that were before the magistrate" who issued the warrant). And we excise any intentional or reckless misstatements in the affidavit: where an officer makes an "intentional" or "reckless misstatement," we evaluate "whether probable cause would be negated if the offending statement was removed." *Paez v. Mulvey*, 915 F.3d 1276, 1287 (11th Cir. 2019); *see also Franks v. Delaware*, 438 U.S. 154, 156 (1978); *Laskar*, 972 F.3d at 1296.

Allen concedes that he failed to verify in which vehicle the drug purchase took place, misrepresented that Land was a target of investigation, and erroneously stated the amount of drugs involved. The district court identified a genuine factual dispute about whether those misstatements were at least reckless. So we exclude them from our probable-cause determination. But contrary to our dissenting colleague's assertion, we need not excise the affidavit's statement that "Land was present" at the crime scene—the Dollar General parking lot—because it is a *true* statement. Land's presence in the parking lot, after he drove himself and Smith there, was verified by the Jackson County surveillance team, who accurately provided Allen with Land's name and identity. Nobody disputes that Land was present. Land's counsel agreed at oral argument that after excising the erroneous facts, the affidavit still established that Land was "the driver of the vehicle that went to a predetermined drug deal" and that he "waited until" the deal was completed. Indeed, counsel responded that Land's "*presence* at the scene of a crime is not enough" to establish probable cause. But Land's continued presence is an important factor in the probable cause determination.

Our dissenting colleague suggests we should consider Allen's subjective intent and deposition testimony in construing his affidavit. But we cannot consider an arresting officer's subjective intent or extrinsic evidence when evaluating whether probable cause existed for a process-based seizure. *See Williams*, 965 F.3d at 1163–64. And were we to open the door to deposition testimony, it would *favor* the finding that Land was present and had the requisite intent to aid the drug sale. For example, Allen testified that Smith had told him that Land was using drugs immediately before the transaction and had agreed to drive Smith to the transaction as payment for drugs; Smith testified that Land knew that Smith was a drug dealer; and Bellamy testified that Land was a "really good friend," that Land and Smith had previously used methamphetamine together, and that the two confidential informants at the crime scene had entered Land's truck while the drug sale was happening.

Even without Allen's misstatements, the initial affidavit provided probable cause to support Land's arrest as a principal to methamphetamine trafficking. Under Florida law, aiding and abetting requires an act in furtherance of the underlying crime, performed with the intent that the crime be committed. *See Staten v. State*, 519 So. 2d 622, 624 (Fla. 1988). Allen's affidavit described an overt act furthering drug trafficking: it explained that Land drove Smith to the clandestine purchase location. And the affidavit provided details from which a factfinder could infer Land's culpable intent. A drug sting was ongoing, Land arrived with the sting's target to the location at the prearranged time, and Land stayed for the

duration of the surveilled transaction—all facts giving rise to the inference that Land intended to aid the suspicious happenings. From these facts, the magistrate judge could reasonably find that Land played a criminal role. *See United States v. Irurzun*, 631 F.2d 60, 63 (5th Cir. Unit B 1980) ("While presence alone is not enough to constitute probable cause, presence and additional factors that would lead a prudent person to believe that an offense has been or is being committed is sufficient.").

Land contends that "mere propinquity" or proximity to criminal activity "without more" does not give rise to probable cause. *See Ybarra v. Illinois*, 444 U.S. 85, 91 (1979). But the only binding precedent that Land cites is distinguishable. In that case, *United States v. Virden*, we held that officers lacked probable cause for the warrantless arrest of an individual who emerged from one of nine properties under police surveillance, where no active sting was being conducted. 488 F.3d 1317, 1319–20 (11th Cir. 2007). Here, in contrast, Land drove an acquaintance, the target of an active drug bust, to a predetermined location and remained present as the target completed the sale. *See Maryland v. Pringle*, 540 U.S. 366, 373 (2003) (being in the front passenger seat of car with cocaine established probable cause because "a car passenger . . . will often be engaged in a common enterprise with the driver" and a drug dealer "would be unlikely to admit an innocent person" into his criminal enterprise because that person has "the potential to furnish evidence against him") (internal quotation marks omitted); *United States v. Ashcroft*, 607 F.2d 1167, 1172 (5th Cir. 1979) (being present in an apartment within earshot of a drug deal on two separate

occasions is enough for probable cause because "a drug sale involving large quantities of [drugs] is a private transaction that does not usually occur in the open or in the presence of strangers"). Land's role as the driver involved more than proximity; he assisted Smith with what appeared to be a shared intent to sell methamphetamine. Allen is entitled to qualified immunity from Land's claim that he violated the Fourth Amendment.

*B. Land's Fourth Amendment Claim Against Sheriff Roberts Fails.*

Land argues that Sheriff Roberts violated his Fourth Amendment right by permitting Allen to illegally arrest him. Land sued Roberts, in his official capacity, for damages. *See* 42 U.S.C. § 1983; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–92 (1978) (*respondeat superior* is not available in a section 1983 claim). To seek damages from the Office of the Sheriff, Land had to establish "(1) that his constitutional rights were violated; (2) that the [municipal office] had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

Land's claim fails at the first step. A *Monell* claim is derivative of—and so requires—an *actual* constitutional violation by an officer. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the [constitutional violation] is quite beside the point."). Because Allen never violated Land's Fourth

Amendment right, Roberts cannot be held liable for constitutionally deficient supervision.

*C. Land Cannot Prove Any Other Violation of His Constitutional Rights.*

Land argues that the officers illegally "over-detained" him, in violation of the Due Process Clause of the Fourteenth Amendment, when they failed to release him after allegedly exculpatory evidence eliminated probable cause. But this argument does not sound in due process. The Fourth Amendment, not the Fourteenth, provides the "explicit textual source of constitutional protection" for a detainee who alleges that he was arrested and held without probable cause. *Alcocer v. Mills*, 906 F.3d 944, 955 (11th Cir. 2018) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989) (internal quotation marks omitted)). Land's argument that new evidence vitiated probable cause and vindicated his innocence is properly considered under the Fourth Amendment. *See Washington*, 25 F.4th at 898 (a challenge to "a seizure based on a warrant [] supported by probable cause but [] later undermined by contrary exculpatory evidence" arises under the Fourth Amendment). And we have already explained that no violation of the Fourth Amendment occurred because Land's arrest warrant was supported by probable cause.

Land's argument that Allen conspired to violate his constitutional rights, *see* 42 U.S.C. § 1983, fails for the same reason: Land cannot identify an underlying constitutional violation. "A plaintiff may state a § 1983 claim for conspiracy to violate constitutional rights by showing a conspiracy existed that resulted in the *actual*

denial of some underlying constitutional right." *Grider v. City of Auburn*, 618 F.3d 1240, 1260 (11th Cir. 2010) (emphasis added). In the absence of a constitutional violation, Land cannot prove a derivative-conspiracy claim.

### D. Land's Florida Law Claims are Barred by Statutory and Sovereign Immunity.

Land's state-law claims against Allen are barred by state-agent immunity. *See* FLA. STAT. § 768.28(9)(a). Florida law shields an officer from personal liability for acts within the scope of his employment unless he "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." *Id.* Because probable cause existed for his arrest, Land cannot establish that Allen acted in bad faith or with malicious purpose. *See Burns v. GCC Beverages, Inc.*, 502 So. 2d 1217, 1218 (Fla. 1986) (malicious prosecution requires lack of probable cause); *Bolanos v. Metropolitan Dade County*, 677 So. 2d 1005, 1005 (Fla. Dist. Ct. App. 1996) (same for false arrest). The "standard for determining the existence of probable cause is the same under both Florida and federal law." *Rankin v. Evans*, 133 F.3d 1425, 1433 (11th Cir. 1998). And Land's claim of intentional infliction of emotional distress fails too. *Hart v. United States*, 894 F.2d 1539, 1548 (11th Cir. 1990) (tort requires "outrageous conduct") (citing *Metro. Life Ins. v. McCarson*, 467 So. 2d 277, 278 (Fla. 1985)). Whether conduct is outrageous is a question of law, and the conduct must be "so extreme in degree, as to go beyond all possible bounds of decency." *Metro. Life*, 467 So. 2d at 278–79. That bar is not met because Allen's affidavit, even without the misstatements, supplied

probable cause to believe that Land had engaged in criminal activity.

Land's negligence claims against Sheriff Roberts are barred by sovereign immunity. Municipalities and their officers are entitled to immunity from tort liability except where that immunity is explicitly waived. FLA. STAT. § 768.28(1); FLA. CONST. art. X, § 13. Florida retains immunity from liability arising from "discretionary" government functions but waives immunity for "operational" functions. *Kaisner v. Kolb*, 543 So. 2d 732, 736 (Fla. 1989). A discretionary function involves an exercise of executive power where the court's "interven[ing] by way of tort law" would "inappropriately . . . entangle it[] in fundamental questions of policy and planning." *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1118 (11th Cir. 2005) (citing *Henderson v. Bowden*, 737 So. 2d 532, 538 (Fla. 1999)). Under Florida law, the training of police deputies is a discretionary function because it is intertwined with the policy and planning of law enforcement. *See Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1266 (11th Cir. 2001) ("[Deputies' training] is clearly an exercise of governmental discretion."). The same logic applies to department policy in the hiring or retention of deputies.

## IV. CONCLUSION

We **AFFIRM** the summary judgment in favor of Allen and Sheriff Roberts

22-12324                ABUDU, J., Dissenting                1

ABUDU, Circuit Judge, Dissenting:

Land was incarcerated for over six months without any hearing on the merits of his charges, based entirely on a warrant and affidavit plagued with false statements. The Majority nevertheless finds the limited, true facts in the affidavit sufficient to establish probable cause to charge Land with trafficking methamphetamine. I disagree.

## I. BACKGROUND

While the Majority Opinion's recitation of the facts is generally correct, further detail and some clarifications are needed to paint the full picture of the issues before us. As an initial matter, the nature and impact of Land's arrest should not be understated. As Land testified, he spent most of June 24, 2016, with his family at a state park. Shortly after returning home, Land was confronted at his doorstep by a host of officers from the Jackson County Sheriff's Office, including Allen. Despite the presence of Land's family, including his wife, grandmother, and young children, multiple officers drew their firearms on Land. Allen arrested Land, told him he was charged with trafficking methamphetamine, and stated that "[t]his is for all the times we did not get you."

Land's misfortune did not end with the circumstances of his arrest. Land was incarcerated in the Jackson County Jail for 207 days after being unable to post bail, which was initially set at $100,000. The state then reduced Land's bond to $47,000, which he had to borrow money to satisfy. While Land was incarcerated, he was unable to work or make child support payments, and his

driver's license was suspended. Since being released, Land has been unable to properly process the distress of his arrest and incarceration without the aid of a professional counselor. Most importantly to Land, his pretrial detention cost him months of time with his children. When the state finally filed its *nolle prosequi*, there was no acknowledgement of the bungled investigation that led to Land's incarceration. To the contrary, the state framed the action as granting Land a lenient sentence of six months for his minimal role in the alleged crime. This framing by the state assumed Land's guilt, even though he was never tried, much less convicted, of the alleged crime.

In addition, the relevant false statements in the warrant should be precisely identified. There are three false statements in the warrant affidavit that should be set aside before considering whether the remaining content of the affidavit supports a finding of probable cause. *See Franks v. Delaware*, 438 U.S. 154, 155–56, 171–72 (1978) (holding that probable cause cannot be established by making recklessly or deliberately false statements). In particular, the affidavit states that (1) Land was a previously identified target of the undercover investigation, (2) "Land was present and did oversee the transaction as it took place inside his vehicle," and (3) the undercover officer confirmed that Land was "present during the transaction." Allen testified that each of these statements was false. Specifically, Allen stated that Land was not a target of the investigation, and when asked to state the probable cause supporting Land's arrest, Allen's entire answer was: "He drove [Mr.] Smith to conduct a drug deal." In fact, Allen admitted that the *only*

22-12324                    Abudu, J., Dissenting                    3

evidence that Land was involved in a drug deal was that he drove Smith to the location of the drug transaction. Allen also conceded that he never confirmed with the undercover officers or others that Land was present during the drug sale. Although it is undisputed that Land remained in his vehicle during the drug transaction and that the transaction took place in a separate vehicle in the parking lot, there is no evidence in the record showing that Land personally witnessed the transaction.

Despite the evidence above, the Majority declines to set aside as false the statements in the warrant affidavit indicating that Land was present. In support of this decision, the Majority points to the undisputed fact that Land was present in the parking lot at the time of the transaction. However, Allen testified that his reference to Land's presence in the warrant affidavit was intended to communicate that Land was present in the vehicle in which the drug transaction occurred, not that Land was present in the parking lot generally. Moreover, it is more than reasonable to conclude that the magistrate also interpreted "present" to mean, albeit falsely, that Land was actually in the vehicle where the drug transaction occurred and personally witnessed it happen. Viewed in the context of the other false statements and Allen's testimony of his intent in preparing the warrant affidavit, the statement to the magistrate judge that Land was "present" during the drug deal was recklessly false.

## II. DISCUSSION

### A. Land's Claim Depends on the Content of the Affidavit Supporting Land's Arrest Warrant.

Because Land's Section 1983 claim is premised on his arrest that was based on a warrant, it is properly considered as a claim for malicious prosecution pursuant to legal process. *Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020). To succeed on a malicious prosecution claim, Land must establish "(1) that the legal process justifying his seizure was constitutionally infirm and (2) that his seizure would not otherwise be justified without legal process." *Id.* at 1165. There is no evidence in the record that Allen's amended affidavit was ever presented for a probable cause determination or that there was some justification for Land's detention other than the initial affidavit. Accordingly, Land's claim is contingent upon whether the first affidavit sufficiently established probable cause for the crime alleged – being a principal to trafficking methamphetamine in violation of Florida law. *See* Fla. Stat. § 893.135(1)(f)(1); *Williams*, 965 F.3d at 1165 (holding that in cases of malicious prosecution brought pursuant to a purportedly faulty warrant, we must "examine[] whether probable cause existed from 'the facts that were before the magistrate who issued the warrant.'" (quoting *Garmon v. Lumpkin County*, 878 F.2d 1406, 1409 (11th Cir. 1989)).

A warrant supporting an arrest is constitutionally infirm if "an official . . . intentionally or recklessly made misstatements or omissions necessary to support the warrant." *Williams* 865 F.3d at 1165. In such cases, this Court employs a two-part test for

22-12324                ABUDU, J., Dissenting                5

evaluating whether the misstatements amount to a Fourth Amendment violation. *Paez v. Mulvey*, 915 F.3d 1276, 1287 (11th Cir. 2019). First, we excise any intentional or reckless misstatements or omissions from the warrant. *Id.* Second, we examine the warrant to determine if it establishes probable cause without those misstatements. *Id.*; *see also United States v. Kirk*, 781 F.2d 1498, 1502 (11th Cir. 1986) ("[W]e must consider: (1) whether the alleged misstatements in the affidavit were made either intentionally or in reckless disregard for the truth, and, if so, (2) whether, after deleting the misstatements, the affidavit is insufficient to establish probable cause." (citing *Franks*, 438 U.S. 154)). Thus, our analysis of probable cause in this case is constrained to the facts contained in the warrant once the misstatements have been excised. *See W. Point-Pepperell, Inc. v. Donovan*, 689 F.2d 950, 959 (11th Cir. 1982) ("[J]udicial review of the sufficiency of an affidavit for the issuance of a warrant must be strictly confined to the information brought to the magistrate's attention.").

The determination of probable cause requires an analysis of "the totality of the circumstances to determine the reasonableness of the officer's belief that a crime has been committed." *Paez*, 915 F.3d at 1286. Although probable cause is "not a high bar," it still requires the official to show "a probability or substantial chance of criminal activity." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018). The Supreme Court has explained that probable cause "exists where the facts and circumstances . . . are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Ker v. California*, 374 U.S.

6                    ABUDU, J., Dissenting                    22-12324

23, 35 (1963) (citation and punctuation omitted).  Proximity to others suspected of criminal activity, without more, is insufficient to establish probable cause, and a seizure does not comport with the Fourth Amendment unless it is supported by probable cause particularized to the individual seized.  *See Ybarra v. Illinois*, 444 U.S. 85, 92 (1979).

While our discussion of case law establishing probable cause includes cases asserting claims other than malicious prosecution, the standard to establish probable cause does not change based on the underlying tort.  Rather, the distinction between those cases is which particular facts should be considered when determining whether probable cause exists.  As explained above, in this instance, the only facts considered in assessing probable cause are the true facts in the warrant affidavit.  *See Williams*, 965 F.3d at 1165.

> B. *Without the False Statements, Land's Arrest Warrant Does Not Establish Probable Cause for the Alleged Crime.*

With the three intentionally[1] or recklessly made false statements properly excised, Allen's affidavit does not establish probable cause to arrest Land as a principal to trafficking

---

[1] While our legal analysis of Land's malicious prosecution claim is constrained to the few, true facts in the warrant affidavit, the evidence of Allen's likely intent and alleged history of unethical behavior is worth noting.  The evidence in the record indicates that Allen (1) was investigated for failing to disclose legal proceedings against him for possession of marijuana, (2) was suspended for having a woman in his law enforcement vehicle and in a hotel room with him, in violation of the sheriff's office's policies, and (3) was reprimanded for violating the sheriff's office's policy on social media usage.

methamphetamine.   The first three paragraphs of the affidavit, without false statements, establish solely that on June 20, 2016, the Jackson County Sheriff's Office conducted an undercover operation targeting Smith, whereby undercover law enforcement officers and confidential informants drove to a prearranged meeting location to make contact with and purchase methamphetamine from Smith.   After excising the other false statements, the third paragraph, which includes the only true information particular to Land, reads as follows:

> Upon arrival, [Confidential Informant] 350 conducted a transaction with Smith providing the currency in exchange for approximately 30.54 grams of suspected crystal [m]ethamphetamine, which meets and exceeds the minimum mandatory trafficking requirements.  Smith was driven to the meeting location by Jeffery Tyler Land ~~and Land was present and did oversee the transaction as it took place inside his vehicle~~.  Land was also positively identified by the undercover officer as the driver of the vehicle ~~and the person being present during the transaction~~.

Simply put, excluding Allen's false statements, the warrant affidavit only indicates that (1) Smith participated in a drug transaction, and (2) Land drove Smith to the location where the drug transaction occurred.  The warrant is silent as to any involvement on Land's part.  It does not indicate that Land helped set up the drug transaction, that he was aware that a drug transaction was going to occur,

8                          ABUDU, J., Dissenting                      22-12324

or that he would benefit in any way from Smith's actions. Excluding the false statements in the warrant, there was no probable cause for a magistrate judge to issue an arrest warrant for Land accusing him of being a "principal to trafficking methamphetamine" under Florida law. Pertinently, a defendant is culpable as a principal to a violation of Florida law only if he "'had a conscious intent that the criminal act be done and . . . the defendant did some act or said some word which was intended to and which did incite, cause, encourage, assist, or advise the other person or persons to actually commit or attempt to commit the crime.'" *Hall v. State*, 100 So. 3d 288, 289 (Fla. Dist. Ct. App. 2012) (quoting *Smith v. State*, 76 So. 3d 1056, 1058 n.3 (Fla. Dist. Ct. App. 2011). Even knowledge of the offense being committed or presence at the scene of the crime accompanied by flight are, without more, insufficient to demonstrate the requisite intent. *Id.* Because the warrant contains no true facts supporting a finding that Land had a conscious intent to further Smith's crime, it does not establish probable cause that Land was a principal to the crime.

>  C. *The Majority Opinion Revises the Warrant for a Post Hoc Finding of Probable Cause.*

The Majority Opinion finds that the remaining factually correct text in the warrant affidavit established probable cause for Land's arrest, but this finding is based heavily on the statements indicating that Land was present during the drug transaction. In particular, the Majority holds that "Land's presence at the crime scene is critical to establishing probable cause." Maj. Op. at 11. However, Land's presence as characterized by the Majority does

not carry the same meaning as was communicated to the magistrate in the warrant affidavit. As discussed above, the other false statements in the warrant paint a picture that Land's presence as described in the affidavit meant he was in the same vehicle in which the drug sale occurred. Because Allen admits that he intended to convey that Land witnessed the drug deal, there can be no retroactively applied clarification of Land's physical location during the drug transaction to now justify Land's unlawful arrest.

With Allen's intentional or reckless misstatements omitted, *see Paez*, 915 F.3d at 1287, the warrant affidavit establishes only that Land drove Smith to the site of the drug transaction. There is no indication in the remaining text of the warrant that Land waited for the transaction to complete or was otherwise present for its occurrence. As explained above, our analysis in this case is constrained to the four corners of the warrant affidavit. *See Whitely*, 401 U.S. at 564–65, n.8; *Williams*, 965 F.3d at 1162. The failure to limit the analysis of Land's malicious prosecution claims to the true facts presented in the warrant affidavit devalues the magistrate's initial probable cause determination and substitutes a new probable cause determination long after the unlawful detention began.

### D. The Warrant Affidavit Fails to Establish Probable Cause Whether or Not Land's Presence Is Considered.

Even if the word "present" is not excised from the warrant affidavit and did mean Land was in the parking lot but not the car (which, again, Allen testified was not the intended meaning), the

remaining language in the warrant affidavit still fails to establish probable cause.

Most significantly, the Supreme Court's holding in *United States v. Di Re* forecloses the possibility of finding probable cause solely based on physical presence. 332 U.S. 581 (1948). In *Di Re*, an investigator was told by an informant that a certain individual would be unlawfully distributing counterfeit gasoline ration coupons at a designated time and place. *Id.* at 583. The named individual was discovered in a vehicle at the location with the coupons on his person, but that individual was accompanied by Di Re. *Id.* The government argued that Di Re's presence in the car with the other individual involved in a crime at the time and location recited by the informant was sufficient to establish probable cause to arrest Di Re. *Id.* at 593. The Court disagreed and found those facts, without more, could not establish probable cause. *Id.* In rejecting the government's contention, the Court explained that "[t]he argument that one who 'accompanies a criminal to a crime rendezvous' cannot be assumed to be a bystander, forceful enough in some circumstances, is farfetched when the meeting is not secretive or in a suspicious hide-out but in broad daylight, in plain sight of passersby, in a public street of a large city, and where the alleged substantive crime is one which does not necessarily involve any act visibly criminal." *Id.*

The facts in the warrant affidavit here mirror the government's argument in *Di Re*. Land's act of accompanying Smith to a crime scene in broad daylight where an informant indicated that

22-12324                ABUDU, J., Dissenting                11

Smith, not Land, would conduct a drug transaction provides no additional indicia of criminal activity on Land's part. Because a target of the investigation other than Land was identified by the informant and because the warrant lacks additional facts from which a magistrate could conclude that Land was involved in the drug transaction, the holding in *Di Re* is indistinguishable and compels us to find that there was no probable cause established by Allen's warrant affidavit.

The lack of probable cause in the warrant affidavit is also demonstrated by this Court's prior decision in *United States v. Virden*. In *Virden*, we rejected the argument that law enforcement officers had probable cause, even with significant evidence of the suspect's involvement in drug activity. 488 F.3d 1317, 1322 (11th Cir. 2007). In that case, the officers knew that "(1) [the suspect] left a location of suspected drug activity, (2) he appeared to have control over the [location's] garage because the garage door closed without anyone else being seen, and (3) he misstated exactly where he had been to the police." *Id.* Yet, we observed that these facts, without more, were insufficient to establish probable cause. *Id.* Here, the warrant affidavit establishes no more evidence than that considered in *Virden*, and a finding of probable cause to arrest Land is inconsistent with our holding in that case.

In support of its holding, the Majority cites to *Maryland v. Pringle*, 540 U.S. 366 (2003) and *United States v. Ashcroft*, 607 F.2d 1167 (5th Cir. 1979), but in *Pringle*, the defendant was arrested in a vehicle at 3:16 a.m. with drugs and $763 of cash within his reach.

*Pringle*, 540 U.S. at 371–72.  The Supreme Court considered the totality of all these factors, including the presence of the cash and the drugs within the defendant's reach, in finding there was probable cause to arrest the defendant.  *See id.* at 372 n.2.  *Ashcroft* also is inapposite because the court's analysis there relied heavily upon the arresting officers' knowledge that the defendant had been present at a prior drug transaction, during which the defendant "was sitting only two feet away from the negotiations and heard all that transpired."  *Ashcroft*, 607 F.2d at 1171.  Even if we consider that Land was in the same parking lot as the drug transaction, there is nothing in the warrant affidavit indicating that Land was within two feet of the transaction or was otherwise aware that it occurred.  *Pringle* and *Ashcroft* involve facts pointing to arrestees with substantially higher involvement in the alleged crime than Land had here, and neither case should lead us to conclude that the warrant affidavit established probable cause to arrest Land.

As described above, the legal process by which Land was arrested, relying upon Allen's recklessly if not intentionally false warrant affidavit, did not meet the standard of probable cause.  We should decline to expressly permit such baseless arrests without consequence, particularly when we consider the six-month detention Land endured.  Otherwise, this Court widens the door for future bad actors to intentionally and maliciously draft bare-bones warrants, unsupported by thorough investigations, and to do so with no fear of consequences for any false statements therein.  In sum, probable cause demands more evidence than what was provided in the warrant affidavit here.

### III. CONCLUSION

The district court's grant of summary judgment as to each of Land's claims is premised upon its finding that Allen had probable cause to arrest Land.  Because Allen's affidavit in support of the arrest warrant, excluding the false statements, did not establish probable cause, this Court should remand this case for further proceedings.

For the foregoing reasons, I respectfully dissent.