**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 25-13391

Non-Argument Calendar

————————————

DAVID C. WARTH,

*Plaintiff-Appellant,*

*versus*

GWINNETT COUNTY PUBLIC SCHOOLS, et al.,

*Defendants,*

THOMAS WILLIAMSON,
    Individually and in his official capacity as an employee of
    Gwinnett County School Police,

*Defendant-Appellee.*

————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:23-cv-05072-MLB

————————————

Before JILL PRYOR, BRANCH, and BLACK, Circuit Judges.

PER CURIAM:

David Warth, a former student at Brookwood High School ("Brookwood"), sued Thomas Williamson, a school resource officer employed by the Gwinnett County Board of Education. Warth argued that Williamson was liable under 42 U.S.C. § 1983 for, among other claims, false arrest and malicious prosecution. As is relevant for this appeal, Warth asserted that Williamson violated the Fourth Amendment by (1) arresting him for trespassing at Brookwood while wearing a fake beard and sunglasses, and (2) submitting an affidavit of probable cause in support of an arrest warrant that alleged Warth had sent an email containing violent death threats to his former teacher, Brittney Dewey.

The district court granted summary judgment to Williamson on both claims, concluding that Williamson was entitled to qualified immunity. Warth appeals the district court's grant of summary judgment as to those two claims.

After review,[1] we affirm the district court.

## I.  BACKGROUND

We summarize the undisputed record evidence, viewing it in the light most favorable to Warth as the non-movant. *See Luke*

---

[1] We review a district court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the non-movant. *Butler v. Smith*, 85 F.4th 1102, 1111 (11th Cir. 2023). We review a district court's application of its local rules for an abuse of discretion. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1302 (11th Cir. 2009).

*v. Gulley*, 50 F.4th 90, 95 (11th Cir. 2022).

From approximately 2011 to 2015, Warth was a student at Brookwood. During part of that time, he was placed in special education classes for students with autism spectrum disorder. Dewey was one of his teachers for those classes. Warth felt frustration at his placement in the special education classes, which was directed at the school system in general and various individuals within the school system, including Dewey. In particular, Warth was frustrated with Dewey based on her treatment of him in the special education classes and her efforts to keep him in those classes when he did not want to continue with them.

In 2015, after a meeting during which Warth unsuccessfully attempted to resolve his issues with Dewey and other school officials, Dewey reported that Warth stared aggressively at her. Soon after, the school received a warning from Warth's therapist that he had threatened to harm Dewey.[2] This series of events led Dewey to apply for and successfully obtain a temporary protective order ("TPO") against Warth that lasted for a year. The school took efforts to ensure that Warth was never present in the same location as Dewey. Those efforts included transferring Warth to Gwinnett Online Campus during his senior year.

---

[2] Warth denies that he ever stared aggressively at or threatened to harm Dewey. As the non-movant, we must accept Warth's version of the facts as true. *See Luke*, 50 F.4th at 95. However, even accepting Warth's version of the facts as true, it is undisputed that the school had received these reports.

Later that year, Warth graduated from high school and began attending Emory University.  Then, in 2016 Warth began contacting a Brookwood employee in the hopes of obtaining certain records relating to his placement in the special education classes.  Warth was told that Brookwood did not have the records he was seeking.

Believing that the records he sought were being stored at Brookwood despite what he had been told, Warth decided to go to Brookwood's campus to ask about the records in person.  On September 6, 2016, Warth went to a CVS close to Brookwood.  There, he purchased neoprene gloves and a hat, which he put on at the CVS, along with a fake beard, hairnet, glasses, and a Brookwood shirt.[3]  He then started walking towards Brookwood.  Concerned by his appearance and behavior, a CVS employee and a local resident called 911 to report Warth as suspicious.

When he arrived at Brookwood, Warth did not go to the front entrance but instead went to the back of the school where the sports facilities were located, as well as a trailer where Dewey taught classes.[4]  Warth was then approached by security officer Mark Torres.  Torres asked Warth who he was and what he was

---

[3] Warth stated that he purchased the gloves to protect his hands from paper cuts, and that he purchased the other items to protect his identity and to hide his reason for coming to the school until he got there.

[4] Warth stated that he went to the back of the school because he felt "internal tension" at the idea of going to the front of the school.  He stated that he then became lost.

doing there. Warth did not respond and instead left the area. A different officer pursued Warth and stopped him in a nearby neighborhood. At that point, Williamson arrived on the scene, followed later by Gwinnett County police officers. Warth continued to refuse to answer any questions or identify himself and instead called his lawyers. Williamson could not identify Warth. After some time, Williamson decided to arrest Warth on suspicion of criminal trespass. It was only after arresting Warth and seeing his identification that Williamson was able to identify Warth.

Warth was charged with stalking Dewey, criminal trespass, and wearing a mask. Warth was released on bond for these charges, which included as a condition that he have no contact with Dewey.

As a result of the charges, Dewey obtained a new TPO against Warth in January 2017. Shortly thereafter, on February 6, 2017, Dewey received an anonymous email with a threat to murder her, her friends, and her family if she did not dismiss all pending legal actions, without specifying any particular case. Dewey did not have any legal cases pending other than the proceedings relating to Warth. The email also explained that Dewey was being monitored and referred to a photo taken of her at a Walmart close to her home, although the email did not attach any photo. The email did not contain any identifying information and was sent

from the following email address: "jacobportmeir@sigaint.org."[5]

Dewey showed the email to Williamson and told him that she suspected that Warth had sent it.[6]  In collaboration with other law enforcement and prosecutors, Williamson then began investigating whether Warth had sent the email.  Williamson suspected Warth at that time because (1) Warth had a history with Dewey, (2) the email was similar in style and tone to Warth's social media posts, and (3) nobody else had a motive to threaten Dewey.

Williamson obtained warrants to search Warth's parents' house and his dorm room at Emory University.  During those searches, Williamson and other officers were unable to recover Warth's personal laptop or phone and did not find any photos of Dewey or other evidence directly proving that Warth had sent the email.  However, Williamson knew that the email had been sent through a TOR[7] browser, which is often used by people to send emails anonymously, and he recovered from Warth's dorm room an index card with the phrase, "How to download a TOR."  Williamson learned from Emory University's IT department that Warth had accessed a TOR browser on his personal computer through the Emory network, although not on the day that the email was sent.  Williamson and the prosecutors suspected that

---

[5] At around the same time, Warth received an anonymous email warning him that he might be "falsely accused" of an unspecified action.

[6] Warth denied sending the email.

[7] "TOR" stands for "The Onion Router."

Warth had scheduled the email to be automatically sent out at a time when he was not using his computer. Williamson also recovered from Warth's dorm room (1) a burner phone; (2) an empty box for a different burner phone, which he stated could have been used to send the anonymous email; and (3) an index card with a written note about "punishment."

After considering the evidence, Williamson and the prosecutors decided to pursue charges against Warth relating to the email. In support of an arrest warrant, they drafted an affidavit of probable cause. The affidavit stated that Warth had committed the offense of aggravated stalking, in violation of O.C.G.A. § 16-5-91. Specifically, the affidavit alleged that Warth "did follow, place under surveillance, and contact" Dewey at Brookwood and the Walmart close to her home. It added that Warth had threatened to kill Dewey's friends and family if she did not dismiss any pending cases. The affidavit stated that Warth did this in violation of the no-contact condition of his pretrial release.

The custom in Gwinnett County when seeking an arrest warrant was to submit a "boilerplate-type" affidavit of probable cause and then provide the full details of the investigation to a magistrate judge via oral testimony. In this case, Williamson testified before a magistrate judge about his investigation, explaining that the charges were based on the email. During his testimony, Williamson described all of the evidence they had obtained, including the full history between Warth and Dewey as well as the failure to recover Warth's personal computer and phone. On March 17,

2017, after hearing Williamson's oral testimony, the magistrate judge determined that probable cause existed for the new charges and issued the requested arrest warrant. On June 14, 2017, Warth was indicted on two counts of aggravated stalking and one count of influencing a witness.

Ultimately, in November 2021, the prosecutors concluded that the evidence they had gathered was insufficient to meet their burden of proof at trial. For that reason, they moved to dismiss all pending charges against Warth, which the state court judge granted.

In October 2023, Warth filed a complaint in Georgia state court against (1) Gwinnett County Public Schools, (2) Gwinnett County School Police, (3) Williamson, and (4) Dewey. Warth asserted both federal § 1983 claims and state-law claims against all defendants. As is relevant for this appeal, Warth alleged that Williamson was liable for claims of (1) § 1983 false arrest for the September 6, 2016, arrest ("Count 1"), and (2) § 1983 malicious prosecution for his actions relating to the March 17, 2017, arrest warrant ("Count 7"). Gwinnett County Public Schools removed the case to federal court based on federal question jurisdiction, 28 U.S.C. § 1331.

The defendants moved to dismiss all claims for failure to state a claim. On September 26, 2024, the district court dismissed all of Warth's claims except for Counts 1 and 7 as well as four other state-law claims against Williamson.

Williamson then moved for summary judgment as to the remaining claims against him. He argued that he was entitled to qualified immunity as to the two remaining federal claims.

On August 26, 2025, the district court granted summary judgment to Williamson as to the two federal claims and remanded the remaining state-law claims to state court. As to Count 1, the district court concluded that Williamson was entitled to qualified immunity because he had both actual and arguable probable cause to arrest Warth on September 6, 2016. As to Count 7, the district court concluded that Williamson was entitled to qualified immunity because he did not intentionally or recklessly omit facts that would defeat probable cause in his oral testimony to the magistrate judge in support of the March 17, 2017, arrest warrant. Lastly, the district court declined to exercise supplemental jurisdiction over the remaining state-law claims under 28 U.S.C. § 1367(c) and thus remanded those claims to state court.

Warth timely appealed.

## II. DISCUSSION

Warth argues that the district court erred by granting summary judgment to Williamson as to his § 1983 claims based on its conclusion that Williamson was entitled to qualified immunity.[8]

State and local government officials are entitled to qualified immunity from civil liability based on actions performed within

---

[8] Warth does not challenge the dismissal of his claims in the September 26, 2024, order or the remand of his state-law claims in the August 26, 2025, order.

their discretionary authority "if their conduct does not violate clearly established constitutional or statutory rights of which a reasonable person would have known." *Aguirre v. Seminole Cnty.*, 158 F.4th 1276, 1296 (11th Cir. 2025). It is undisputed that Williamson was a government official acting within the scope of his discretionary authority at all relevant times, so to establish that Williamson was not entitled to qualified immunity, Warth needed to establish that (1) Williamson violated a constitutional right, and (2) the right was clearly established at the time of the alleged violation. *Id.*

Warth specifically argues that (1) Williamson lacked probable cause to arrest Warth or bring any criminal charges against him, and (2) the district court erred by granting summary judgment to Williamson simply because Warth's response to Williamson's statement of material facts did not cite to record evidence as required by N.D. Ga. Local Rule 56.1(B)(2). We address each argument in turn.

## A. False Arrest

In his appellate brief, Warth does not appear to substantively challenge the district court's grant of summary judgment to Williamson as to his federal false-arrest claim relating to the September 6, 2016, arrest. Warth discusses the arrest only in passing and does not address the substance of the district court's legal conclusion. Therefore, Warth has arguably abandoned any argument as to this issue. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises

it in a perfunctory manner without supporting arguments and authority."). Nevertheless, even if Warth did not abandon any argument as to this issue, we would still affirm the district court on this ground.

A law enforcement officer violates the Fourth Amendment if he arrests a person without a warrant or probable cause. *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010). "Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." *Id.*

In this case, Williamson was entitled to qualified immunity as to the false-arrest claim because the undisputed facts show that he had probable cause to arrest Warth on September 6, 2016. *See id.* at 735 ("If the arresting officer had arguable probable cause to arrest for any offense, qualified immunity will apply."). Specifically, Williamson had probable cause to arrest Warth for criminal trespass. *See* O.C.G.A. § 16-7-21(b)(1) ("A person commits the offense of criminal trespass when he or she knowingly and without authority . . . [e]nters upon the land or premises of another person . . . for an unlawful purpose."); *Daniel v. State*, 201 S.E.2d 393, 393-94 (Ga. 1973) (affirming conviction for criminal trespass where the defendants trespassed on public school property).

The undisputed record evidence establishes that on September 6, 2016, Warth (1) entered Brookwood wearing an obvious disguise, (2) went to the back of the school instead of the front office,

(3) refused to explain who he was or why he was there when confronted, and (4) fled the premises and continued refusing to answer any questions when again confronted.  Based on these facts, an objectively reasonable officer in Williamson's position could conclude that Warth had entered Brookwood's campus without permission for the purpose of committing a crime.  *See Daniel v. State*, 804 S.E.2d 61, 65 (Ga. 2017) ("In the context of criminal trespass, this Court has interpreted an unlawful purpose to be a purpose to violate a criminal law." (quotation marks omitted)).  Although Warth stated that he went to Brookwood to obtain records rather than to commit a crime, he did not inform any of the officers of this purpose, and so it would be reasonable for an officer in Williamson's position to conclude that Warth was instead there for some criminal purpose in light of all of the highly suspicious surrounding circumstances.

Moreover, Warth has not shown that Williamson lacked "arguable probable cause" to arrest him on September 6, 2016.  *See Garcia v. Casey*, 75 F.4th 1176, 1186 (11th Cir. 2023) ("[T]o establish the defense of qualified immunity for a false arrest claim, we have held that an officer need not have actual probable cause, but only arguable probable cause." (quotation marks omitted)).  "An officer lacks arguable probable cause only if the state of the law on the date of the alleged misconduct makes it obvious that the officer's acts violated the plaintiff's rights in the specific set of circumstances at issue."  *Id.* (quotation marks omitted and alteration adopted).  Warth has not cited to any legal authority establishing that it was

obvious that Williamson violated his constitutional rights by arresting him based on the objectively reasonable conclusion that he had committed the offense of criminal trespass, and our independent research has revealed no such authority.

For those reasons, the district court did not err by granting summary judgment to Williamson as to the false-arrest claim.

### B. Malicious Prosecution

Warth's primary argument on appeal is that Williamson violated the Fourth Amendment in his application for the March 17, 2017, arrest warrant because he knew that he did not have any evidence that Warth (1) had followed, placed under surveillance, or contacted Dewey at Brookwood or at the Walmart close to her home, or (2) had sent the anonymous email to Dewey. Warth asserts that Williamson omitted and misstated material evidence in the affidavit of probable cause by failing to convey this lack of evidence.

To succeed in a § 1983 claim for malicious prosecution, a plaintiff must prove "(1) that the defendant violated his Fourth Amendment right to be free from seizures pursuant to legal process and (2) that the criminal proceedings against him terminated in his favor." *Luke*, 50 F.4th at 95 (quotation marks omitted). "The first element requires proof that the legal process justifying [the plaintiff's] seizure was constitutionally infirm and that [the plaintiff's] seizure would not otherwise be justified without legal process." *Id.* (quotation marks omitted).

An affidavit of probable cause supporting an arrest warrant

"may be constitutionally defective when an officer has intentionally or recklessly made misstatements or omissions necessary to support the probable-cause finding." *Aguirre*, 158 F.4th at 1301. To determine whether an affidavit of probable cause was constitutionally defective in this way, we first assess "whether there were any intentional or reckless misstatements or omissions," and then "ask whether probable cause would be negated if such statements were removed or omissions included." *Id.* Specifically, we must analyze whether the affidavit of probable cause established arguable probable cause, considering "whether a reasonable officer in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed." *Butler v. Smith*, 85 F.4th 1102, 1116 (11th Cir. 2023) (quotation marks omitted and alterations adopted). In doing so, we must analyze whether the affidavit established arguable probable cause as to the charged crime in particular. *Id.*

The affidavit of probable cause supporting the March 17, 2017, arrest warrant is scant of information. It alleged that Warth had committed the offense of aggravated stalking by following, placing under surveillance, and contacting Dewey at Brookwood and at a Walmart close to her home, more specifically by threatening to kill her family and friends, in violation of a condition of pretrial release. *See* O.C.G.A. § 16-5-91(a) ("A person commits the offense of aggravated stalking when such person, in violation of a . . . condition of pretrial release, . . . follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing

and intimidating the other person."). The affidavit did not specifically refer to the threatening email that was the basis for the charge or to any of the evidence that supported the conclusion that Warth had sent the email.

While the written affidavit on its own lacked many important details supporting the aggravated-stalking allegation, the record undisputedly establishes that Williamson orally testified before the magistrate judge who issued the March 17, 2017, arrest warrant, about the evidence supporting the conclusion that Warth had sent the email. Significantly, Williamson described to the magistrate judge (1) the circumstantial evidence supporting the conclusion that Warth had sent the email; (2) the lack of direct evidence supporting that conclusion, including law enforcement's failure to recover Warth's personal computer and phone; and (3) the full history between Warth and Dewey. In his testimony, Williamson did not omit or misstate any facts to make the case seem stronger than it actually was.

When deciding whether an arrest warrant was constitutionally defective, we assess "whether the judicial officer who made the probable-cause determination had sufficient, truthful information to establish probable cause." *Williams v. Aguirre*, 965 F.3d 1147, 1163 (11th Cir. 2020). This includes oral testimony presented to a magistrate judge that supplements a written affidavit of probable cause. *See Garmon v. Lumpkin Cnty.*, 878 F.2d 1406, 1409 n.1 (11th Cir. 1989) (explaining that an affidavit of probable cause can be supported by oral testimony); *Butler*, 85 F.4th at 1113-14 (considering

an officer's oral statement in addition to written affidavits presented to a magistrate judge in analyzing a malicious-prosecution claim); *cf. Land v. Sheriff of Jackson Cnty.*, 85 F.4th 1121, 1127 (11th Cir. 2023) ("We do not consider the subjective knowledge of the arresting officer, later amendments not presented to a magistrate judge, or any evidence not incorporated into the operative affidavit."). Therefore, given that Williamson provided the magistrate judge with all of the relevant information regarding the email via oral testimony, including the lack of direct evidence connecting Warth to the email, we cannot say that Williamson misstated or omitted any material evidence in his application for the March 17, 2017, arrest warrant.[9]

Further, considering all of the evidence that Williamson acquired through the investigation and presented to the magistrate judge, there was at least arguable probable cause to arrest and

---

[9] Warth argues that the district court should not have considered Williamson's oral testimony because he only discussed it in deposition testimony and a written affidavit and did not present "verifiable evidence" of that testimony, such as transcripts. For that reason, Warth contends that Williamson's oral testimony is disputed. However, Warth does not point to any record evidence to establish that it actually was disputed that Williamson orally testified before the magistrate judge about all of the evidence, both good and bad, relating to the investigation. *See Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) ("Once the movant . . . satisfies its initial burden under [Fed. R. Civ. P.] 56(a) of demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmovant to come forward with specific facts showing that there is a genuine issue for trial." (quotation marks omitted)). In fact, Warth himself acknowledged during his deposition that Williamson orally testified in support of the arrest warrant.

charge Warth with aggravated stalking. An objectively reasonable officer in Williamson's position could have concluded that Warth committed the offense of aggravated stalking against Dewey specifically by threatening to kill her, her friends, and her family via the anonymous email in violation of the no-contact provision of his pretrial release. *See* O.C.G.A. § 16-5-91(a). The evidence supporting that conclusion included (1) Warth's history of conflict with Dewey while he attended Brookwood; (2) the 2015 warning from Warth's therapist that Warth had threatened to harm Dewey; (3) the September 6, 2016, incident where Warth was found trespassing on Brookwood's campus close to the trailer where Dewey taught; (4) the fact that the email instructed Dewey to dismiss all of her pending legal actions, while the only legal actions that she was involved in at that time related to Warth; and (5) the fact that Warth researched how to use and accessed a TOR browser, which was used to anonymously send the email to Dewey, even though he did not access such a browser on the day the email was sent.

Although a reasonable officer in Williamson's position could have concluded that the lack of direct evidence connecting Warth to the email indicated that he did not send it, a reasonable officer in Williamson's position could have believed based on the above evidence that there was probable cause to arrest Warth for aggravated stalking. *See Washington v. Howard*, 25 F.4th 891, 902 (11th Cir. 2022) ("[A] police officer need not resolve conflicting evidence in a manner favorable to the suspect."). Therefore, the district court did not err by granting summary judgment to Williamson as

to the malicious-prosecution claim.[10] *See Aguirre*, 158 F.4th at 1301; *Butler*, 85 F.4th at 1116.

*C. Local Rule 56.1*

Lastly, Warth argues that the district court erred by automatically granting summary judgment to Williamson based on its application of N.D. Ga. Local Rule 56.1.

Local Rule 56.1 requires that a respondent to a summary judgment motion include with his responsive brief a response to the movant's statement of undisputed facts. N.D. Ga. Local Rule 56.1(B)(2)(a). The Rule adds, "This Court will deem each of the movant's facts as admitted unless the respondent," among other things, "directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number)." *Id.* R. 56.1(B)(2)(a)(2). In other words, when a respondent fails to comply with this Rule, the district court can "disregard or ignore evidence relied on by the respondent—but not cited in its response to the movant's statement of undisputed

---

[10] Warth makes much of the fact that, although the affidavit of probable cause alleged that he contacted and surveilled Dewey at Brookwood and a Walmart close to her home, there was no evidence that Dewey was present at the Walmart at the relevant time or that he himself was present at either Brookwood or the Walmart at the relevant time. Although the affidavit does imply that Warth physically stalked Dewey at those locations, that potential implication is immaterial because Williamson orally testified before the magistrate judge that the primary basis for probable cause was the threatening email, and there was arguable probable cause to conclude that Warth had sent the email in violation of the non-contact condition of his pretrial release and thus committed the offense of aggravated stalking.

facts—that yields facts contrary to those listed in the movant's statement." *Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008). Thus, a non-movant's failure to comply with this requirement means that "the court has before it the functional analog of an unopposed motion for summary judgment." *Id.*

Application of this Rule "does not, however, automatically entitle the movant to summary judgment. This is so because under [Fed. R. Civ. P.] 56, the moving party *always* bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "The movant therefore continues to shoulder the initial burden of production in demonstrating the absence of any genuine issue of material fact, and the court must satisfy itself that the burden has been satisfactorily discharged." *Id.*

In this case, the district court concluded that Warth's response to Williamson's statement of undisputed facts did not comply with Local Rule 56.1(B)(2)(a)(2) because it did not cite to the record in support of its assertions. For that reason, the court ignored Warth's response and based its summary of the facts on Williamson's statement of undisputed material facts.

Contrary to Warth's argument, the district court did not automatically grant summary judgment to Williamson solely based on Warth's failure to comply with Local Rule 56.1. Rather, it did

exactly what we said it could do in *Reese*: It disregarded Warth's response to Williamson's statement of undisputed material facts and then reviewed whether Williamson had met his burden under the summary-judgment standard. *See id.* Accordingly, the district court did not abuse its discretion in applying Local Rule 56.1.

## III. CONCLUSION

The district court did not err by granting summary judgment to Williamson as to Warth's federal claims for false arrest and malicious prosecution. The district court also did not abuse its discretion in its application of N.D. Ga. Local Rule 56.1.

**AFFIRMED.**